# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2020

Lyle W. Cayce

Clerk

No. 20-60054

Paul Edwin Johnson; Susan H. Johnson,

*Petitioners—Appellants*,

*versus*

Commissioner of Internal Revenue,

*Respondent—Appellee*.

Appeal from a Decision of the
United States Tax Court
No. 14429-18

Before Smith, Willett, and Duncan, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Paul and Susan Johnson petitioned the Tax Court for review of an IRS notice of deficiency assessing them about $51,000 in taxes, penalties, and interest. After the dispute was resolved in their favor, the Johnsons moved for costs under 26 U.S.C. § 7430. The Tax Court denied the motion, and we affirm.

I.

On their 2015 tax return, the Johnsons claimed $186,981 of income—of which $41,827 was taxable—from individual retirement accounts

("IRAs"), pensions, and annuities. Included in that $186,981 figure were $141,793 in non-taxable IRA distributions and $45,188 of pension and annuity income. The $141,793 distribution related to the Johnsons' rolling over an IRA from one institution to another. Ultimately, $141,233 was rolled over after accounting for $560 in account-closing fees.

The third-party documentation reported to the IRS told a different story. Specifically, the IRS received notice of three income streams: (1) Riversource Life Insurance reported that the Johnsons received a $141,793 distribution, all of which was taxable; (2) Northern Trust recorded that it paid the Johnsons $45,187, of which $44,826 was taxable; and (3) Equity Trust Company detailed that it made a $20,000 taxable distribution. Equity Trust also documented a non-taxable rollover contribution of $141,233.

The IRS mailed the Johnsons a letter, informing them that their 2015 return did not reconcile with the third-party information the IRS had received. Specifically, the letter referenced (1) the $141,793 distribution from Riversource, (2) the $20,000 payment from Equity Trust, and (3) a $106 divided from Proshares Ultra Bloomberg Crude Oil. The letter explained that "[y]our trustee did not verify the amount claimed on your Form 1040 as a rollover to your [IRA]. If you made a partial rollover of the income in question, please provide a signed explanation in your response to this notice."

A veritable "Battle of the Letters" followed. The Johnsons responded by asking for copies of the IRS's documentation and stating that they already claimed the $141,793 rollover on their return. The IRS answered by asking the Johnsons—if they were claiming the $141,793 as a rollover—to send a "Form 5498 with the amount in box 2 or similar documentation." The Johnsons never provided the requested support.

Despite a series of twenty-four letters and phone calls, the IRS and the Johnsons were unable to reconcile their differences. As a result, the IRS pro-

vided the Johnsons with a summary of proposed changes to their 2015 return, which suggested an additional payment of $51,333 to cover the applicable taxes, penalties, and interest.[1]  The Johnsons maintained that the IRS was improperly double counting a single IRA rollover and that they could not provide documentation to support a second distribution that had never occurred.

At an impasse, the IRS mailed the Johnsons a notice of deficiency, detailing the IRS's determination that they owed the additional amount reflected in the summary of proposed changes.  The Johnsons filed a petition in the Tax Court, explaining that they had closed out several accounts in an IRA before rolling them over to a different IRA.  They clarified that the amount rolled over was about $500 less than the amount initially distributed to account for "fees related to closing out the accounts."  They posited that the $500 difference might explain the IRS's mistaken assumption that they received two separate distributions of about $141,000.

The Commissioner responded by (1) admitting to sending the notice of deficiency and (2) denying, "for lack of sufficient knowledge or information," the Johnsons' contention that the deficiency determination was incorrect.  Ultimately, after its Office of Appeals reviewed the case, the IRS and the Johnsons agreed to a stipulated decision that the Johnsons owed no additional taxes or penalties for 2015.  Shortly thereafter, the Tax Court recharacterized the stipulated decision as a "Stipulation of Settled Issues" and ordered the Johnsons to move for any fees and litigation costs within three weeks.

Two weeks later, the Johnsons moved for thousands of dollars in costs.  Of the amount sought, only $71 represented out-of-pocket expenses

---

[1] The IRS also sent the Johnsons a publication detailing their rights to challenge the IRS's determinations.

(namely filing fees and postage). The Johnsons supplemented their motion, asking for almost twice as much as before. But, again, only $71 related to out-of-pocket costs.

The Commissioner opposed the motion on three grounds. First, the Johnsons had not exhausted all administrative remedies before petitioning the Tax Court, as required by the Internal Revenue Code ("IRC"). Second, the Commissioner's position in the litigation was "substantially justified." And third, most of the costs the Johnsons sought did not constitute "reasonable litigation costs" under the IRC.

The Tax Court agreed with the Commissioner, denied the motion, and entered judgment consistent with the stipulation. The court initially observed that "[t]he majority of the expenses that [the] Johnson[s] claim[ed] d[id] not constitute 'reasonable litigation costs' as Congress defined that term in [the IRC]." Consequently, the court limited its analysis to only the $71 related to filing fees and postage.

As for those expenses, the court found that the IRS's position was substantially justified.[2] Specifically, the court concluded that the Commissioner was entitled to seek clarification on whether the Johnsons (1) received $20,000 from Equity Trust, (2) rolled over the full amount of the IRA distribution from Riversource, and (3) completed any such rollover within the IRC's sixty-day window.

The Commissioner, according to the court, was "not required to concede the adjustments until he [ ] received, and [ ] had a chance to review, sufficient substantiation" from the Johnsons regarding the disputed transactions. And because that documentation never came, the IRS's position was

---

[2] Accordingly, the Tax Court did not consider whether the Johnsons had exhausted the available administrative remedies.

No. 20-60054

substantially justified, and the Johnsons were not entitled to costs.  After unsuccessfully moving for reconsideration, the Johnsons appeal *pro se*.

II.

"We review the [Tax Court's] denial of a request for litigation costs for abuse of discretion."  *Estate of Cervin v. Comm'r*, 111 F.3d 1252, 1256 (5th Cir. 1997).  "Thus, we reverse only if we have a definite and firm conviction that an error of judgment was committed."  *Nalle v. Comm'r*, 55 F.3d 189, 191 (5th Cir. 1995) (quotation marks omitted).

In a tax case, a prevailing party may be awarded "reasonable administrative costs" and "reasonable litigation costs."  26 U.S.C. § 7430(a).  A party "prevails" if it (1) "substantially prevail[s] with respect to the amount in controversy" or (2) "substantially prevail[s] with respect to the most significant issue or set of issues presented."[3]  "A party shall not be treated as the prevailing party," however, "if the United States establishes that the position of the United States in the proceeding was substantially justified."  *Id.* § 7430(c)(4)(B)(i).

"The IRS has the burden of establishing that its position was substantially justified."  *Estate of Baird v. Comm'r*, 416 F.3d 442, 446 (5th Cir. 2005).  "A position is substantially justified when it is justified to a degree that could satisfy a reasonable person."  *Ragan v. Comm'r*, 135 F.3d 329, 334 (5th Cir. 1998) (quotation marks omitted).  In this context, "the 'position of

---

[3] 26 U.S.C. § 7430(c)(4)(A)(i).  The prevailing party must also show that the party's net worth does not exceed $2 million.  *See id.* § 7430(c)(4)(A)(ii) (stating that a prevailing party must meet "the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28, United States Code"); 28 U.S.C. § 2412(d)(1)(B) (outlining the process by which a "party" must seek an award for "fees and other expenses"); *id.* § 2412(d)(2)(B) (defining "party," most relevantly, as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed").

the United States' is the position taken by the IRS in the Tax Court."[4]

When determining "whether the IRS has satisfied its burden . . . , the court examines the facts and legal precedents available at the time the IRS took its position." *Baird*, 416 F.3d at 446–47.  To evaluate a position's reasonableness, "we consider all the facts and circumstances surrounding the dispute." *Nalle*, 55 F.3d at 191.  "A significant factor in determining whether" the IRS's position "is substantially justified . . . is whether . . . the taxpayer has presented all relevant information under the taxpayer's control and relevant legal arguments supporting the taxpayer's position . . . ." 26 C.F.R. § 301.7430-5(d)(1).  "Of course, the ultimate failure of the government's legal position does not necessarily mean that it was not substantially justified. It is, however, a factor to be considered." *Lennox v. Comm'r*, 998 F.2d 244, 248 (5th Cir. 1993).

We must define the boundaries of the IRS's "position."  *Baird*, 416 F.3d at 447.  The Johnsons posit that, because the Commissioner admitted to some of their factual allegations, the IRS's position was that *it* had made a mistake.  "[I]t is that mistake," the Johnsons aver, "that the Commissioner must show to be substantially justified."  And because the Tax Court did not base its "substantially justified" determination on the IRS's having erred, the Johnsons reason that the court abused its discretion.

That characterization of the IRS's position is belied by the record. When the Commissioner answered the Johnsons' petition, he did not concede that the IRS had made a mistake but, instead, denied the bulk of the

---

[4] *Baird*, 416 F.3d at 446; *see also* 26 U.S.C. § 7430(c)(7)(A) ("The term 'position of the United States' means . . . the position taken by the United States in a judicial proceeding to which subsection (a) applies."); *Nalle*, 55 F.3d at 191 ("[T]he question is whether the Commissioner acted unreasonably—that is, whether she knew or should have known that her position was invalid at the onset of the litigation.").

Johnsons' allegations "for lack of sufficient knowledge or information." To the contrary, the Commissioner admitted only (1) that the IRS corrected the Johnsons' 2015 return to show about $141,000 in additional income and (2) that the correction was based on information it had received from third parties.

The Commissioner maintains that the IRS's position was substantially justified given the available information. The record plainly reflects a discrepancy between the Johnsons' return and the IRS's third-party material. Relevantly, the IRS had documents showing, *inter alia*, that (1) the $141,793 distribution from Riversource was taxable (not non-taxable as the Johnsons claimed), (2) $3,000 more of the $45,187 payment from Northern Trust was taxable than the Johnsons suggested, and (3) $20,000 of taxable pension income from Equity Trust had not been included in the return.

Moreover, when the Commissioner answered, the IRS had not received *any* substantiating documents from the Johnsons. That was true even though the IRS provided the Johnsons with the relevant contact information so that they could follow up with the proper third parties directly.[5] It was not until this case was reviewed by the Office for Appeals—after the IRS had issued its notice of deficiency and the Commissioner had answered the petition—that the IRS connected the Riversource distribution with the contribution to the Equity Trust IRA.

Because the Johnsons failed to provide "any documents, records, or other objective evidence" supporting that they had properly rolled over their IRA, the Tax Court reasoned that "the Commissioner [wa]s not required to concede the adjustments until he [ ] received and had reasonable time to

---

[5] The IRS informed the Johnsons that it was unable to send copies of the documents that they had requested, because the IRS had received the information electronically.

No. 20-60054

review, sufficient substantiation for the matter in question." Given the available facts, the Tax Court did not abuse its discretion by concluding that the IRS's position was substantially justified.[6]

* * * * *

Because § 7430's requirements are conjunctive, we need not consider whether the Johnsons exhausted the available administrative remedies or whether their requested fees are reasonable.[7] The order of the Tax Court is AFFIRMED.

---

[6] *See, e.g.*, *Sher v. Comm'r*, 861 F.2d 131, 135 (5th Cir. 1988) (holding that the Commissioner's position was substantially justified because, based on the information available, she "had no reason to believe the information upon which she was relying was erroneous"); *Harrison v. Comm'r*, 854 F.2d 263, 265 (7th Cir. 1988) ("The IRS took the position of conceding the case as soon as it received and verified information demonstrating that that was the proper course. This was a reasonable position.").

[7] *See* 26 U.S.C. § 7430(a) (providing that prevailing parties may recover "reasonable administrative costs" and "reasonable litigation costs"); *id.* § 7430(b)(1) (mandating prevailing party have exhausted administrative remedies); *id.* § 7430(b)(3) (requiring costs be denied where the prevailing party protracted the proceedings); *id.* § 7430(c)(1) (defining "[r]easonable litigation costs"); *id.* § 7430(c)(4)(B)(i) (outlining "substantially justified" exception).